UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SANKET VYAS, as liquidating agent for and
on behalf of Q3 I, L.P.,

                                    Plaintiff,

              -against-

TAGLICH BROTHERS, INC., and
TAGLICH PRIVATE EQUITY, LLC,

                                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   __1/13/2025___

23 Civ. 8104 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendants, Taglich Brothers, Inc., and Taglich Private Equity, LLC (together,

"Taglich"), move to dismiss claims for breach of fiduciary duty and negligence brought by

Plaintiff, Sanket Vyas as liquidating agent for and on behalf of Q3 I, L.P. ("Q3I").  ECF No. 209;

*see also* Am. Compl. ¶¶ 49–63, ECF No. 48.  For the reasons stated below, Taglich's motion to

dismiss is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

In 2017, Quan Tran, James Seijas, and Michael Ackerman formed a cryptocurrency

trading group.  Am. Compl. ¶ 16.  The next year, Tran, Seijas, and Ackerman formalized the

group by creating Q3I, a Delaware limited partnership that accepted deposits from limited

partners and placed those deposits into various cryptocurrency exchanges, where a proprietary

algorithm would ostensibly make high-frequency trades.  *Id.* ¶¶ 18, 42.  Q3I hired Denis

McEvoy, a chartered financial analyst, to serve as fund administrator.  *Id.* ¶ 19.  At the time,

McEvoy worked at Taglich Brothers, Inc., a New York-based broker-dealer.  *Id.* ¶¶ 5, 10, 29.

According to the amended complaint, McEvoy was retained "to manage Q3I's compliance

policies and procedures to protect Q3I's limited partners, and to oversee all aspects of Q3I's fund

operations." *Id.* ¶ 26; *see also id.* ¶¶ 27–28.

By December 2019, Q3I had accepted deposits of more than $33 million from over 150

investors. *Id.* ¶ 41. As it turned out, the operation was a scam. Ackerman defrauded Q3I's

investors, creating reports with false returns and taking unearned "profits" from the partnership's

bank account at Signature Bank, N.A. ("Signature Bank"). *Id.* ¶¶ 2–3, 16–17. He has since

pleaded guilty to criminal fraud. *Id.* ¶ 2.

One year later, in December 2020, Q3 Investment Recovery Vehicle, LLC (the

"Recovery Vehicle"), a limited liability company representing 69 of Ackerman's victims,

including Vyas, sued McEvoy, Signature Bank, and Taglich in New York state court.[1] *See*

*generally* Compl., *Q3 Invs. Recovery Vehicle, LLC v. McEvoy*, No. 657090/2020 (N.Y. Sup. Ct.

Dec. 16, 2020), NYSCEF No. 2. In its amended complaint, the Recovery Vehicle alleged claims

of breach of fiduciary duty against McEvoy and Taglich and claims of negligence and gross

negligence against all the defendants. Am. Compl. ¶¶ 79–100, *Recovery Vehicle*,

No. 657090/2020, NYSCEF No. 36. In January 2023, Supreme Court, New York County,

dismissed these claims.[2] ECF No. 57-1 at 18. Before that dismissal order issued, however,

Seijas and Tran agreed to make Vyas the liquidating agent for Q3I, giving him the authority "to

act in his . . . own name as agent for and on behalf of the" limited partnership. *See* ECF No. 244-

1 at 1–2; Am. Compl. ¶ 7.

---

[1] The Recovery Vehicle's amended complaint brought alleged claims pertaining to 73 victims. Am. Compl. ¶ 2, *Recovery Vehicle*, No. 657090/2020, NYSCEF No. 36.

[2] The Recovery Vehicle appealed this dismissal, ECF No. 57-2, and the Federal Deposit Insurance Corporation, as receiver for Signature Bank, removed the action to federal court, Removal Not., *Recovery Vehicle v. McEvoy*, No. 23 Civ. 3086 (S.D.N.Y. Apr. 13, 2023), ECF No. 1. In August 2023, the Recovery Vehicle dismissed its claims against McEvoy and Taglich, explaining that it had already settled its claims with McEvoy and that Vyas, as liquidating agent, would be pursuing the claims against Taglich in federal court. Dismissal Order, *Recovery Vehicle*, No. 23 Civ. 3086, ECF No. 20.

In July 2022, Vyas filed the current action on behalf of Q3I in the Middle District of Florida, where it was assigned to the Honorable Charlene Edwards Honeywell.  ECF Nos. 1–2. After Taglich moved to dismiss, ECF No. 26, Vyas filed the operative amended complaint, asserting breach of fiduciary duty, negligence, and gross negligence, Am. Compl. ¶¶ 49–63. Taglich subsequently moved to stay the action under the first-filed rule, or in the alternative, to transfer the action to the Southern District of New York, ECF No. 86, and in September 2023, Judge Honeywell transferred the action to this District, ECF No. 122, where Taglich once again moved to dismiss, ECF No. 209.  After the motion was fully briefed, counsel for Vyas wrote to the Court and, for the first time, expressed doubt about the existence of federal subject matter jurisdiction.  *See* ECF No. 237.  Specifically, Plaintiff's counsel stated that he had recently encountered law holding that a party who sues in a merely representative capacity cannot rely on his own citizenship for purposes of diversity jurisdiction, but rather must rely on the citizenship of the party he represents.  *Id.* at 1–2; *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 194 (2d Cir. 2003).  Because the represented party here, Q3I, has general and limited partners that are citizens of California, New Jersey, and New York, and Taglich's citizenship encompasses those same states, counsel argued, diversity jurisdiction was lacking.  ECF No. 237 at 1–2.  The Honorable Katharine H. Parker, to whom the Court had referred this matter for general pretrial management, ordered expedited briefing on the issue.  ECF Nos. 130, 238; *see also* ECF Nos. 243–44.  That briefing and Taglich's motion to dismiss are now before the Court.

## LEGAL STANDARD

When evaluating a motion to dismiss, the Court must consider whether a plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively v. WAFRA Inv. Advisory Grp.*, 6 F.4th 293, 301 (2d Cir. 2021)

(quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  The Court draws all reasonable

inferences in the plaintiff's favor and abstains from "weigh[ing] competing allegations asserted

by the moving party."  *Id.*  In conducting its analysis, the Court considers "the complaint, the

answer, any written documents attached to them, and any matter of which the court can take

judicial notice for the factual background of the case."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647

F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

## DISCUSSION

I.    Subject Matter Jurisdiction

A federal court possesses diversity jurisdiction over all civil actions in which the amount

in controversy exceeds $75,000 and the action is between citizens of different states.  28 U.S.C.

§ 1332(a)(1).  For diversity purposes, a corporation is a citizen of every state in which it is

incorporated and the state where it has its "principal place of business."  *Id.* § 1332(c)(1).

Conversely, the citizenship of limited partnerships and limited liability companies depends on

the citizenship of their members.  *Carden v. Arkoma Assocs.*, 494 U.S 185, 195–96 (1990); *see*

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000).  For

diversity jurisdiction to lie, "all of the adverse parties in a suit" must be "completely diverse with

regard to citizenship."  *Handelsman*, 213 F.3d at 51 (quoting *E.R. Squibb & Sons, Inc. v.*

*Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998)).

Taglich Brothers, Inc., is a New York corporation with its principal place of business in

New York.  Am. Compl. ¶ 10.  Taglich Private Equity, LLC, has three members: (1) an

individual who is a citizen of Vermont, (2) a limited liability company whose two members are

citizens of New Jersey, and (3) another limited liability company whose only member is a citizen

of California.  *Id.* ¶ 11.  Vyas was a citizen of Louisiana at the time he filed this action.  *Id.* ¶ 7;

*see also Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) (explaining that whether

diversity jurisdiction exists depends on the parties' citizenship at the time a suit begins).

However, as Vyas observes in his recent letter, he brings this action not merely as a

private individual, but "as liquidating agent for and on behalf of [Q3I]."  Am. Compl. at 1; *see*

*also* ECF No. 237 at 1 (asserting that Vyas "brings this case solely in his representative capacity

'as liquidating agent for and on behalf of [Q3I]'").  "[W]here a plaintiff brings a suit solely in his

representative capacity, the citizenship of the represented party, and not that of the

representative, controls."  *Oscar Gruss*, 337 F.3d at 194.  The represented party here, Q3I, has

partners who are citizens of New York, New Jersey, and California.  ECF No. 237 at 2.   If the

Court must consider the citizenship of Q3I in its jurisdictional analysis, therefore, diversity

jurisdiction does not lie.

Luckily for all parties, Q3I's citizenship is not determinative because Vyas is not suing

"solely in his capacity as an agent, . . . but also as an individual who has his own stake in the

litigation."  *Oscar Gruss*, 337 F.3d at 194.  In this Circuit, "[a] party's citizenship is taken into

account for diversity purposes when it is a "real and substantial part[y] to the controversy."  *U.S.*

*Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 608 (S.D.N.Y. 2012)

(quoting *Oscar Gruss*, 337 F.3d at 193)).  A party bringing a suit on behalf of another entity is

considered a "real and substantial party" when, for example, it is empowered to "hold, manage,

and dispose of assets for the benefit of others," *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464

(1980), or enjoys discretion to "initiate" and "control" litigation, *Wilmington Tr., Nat'l Ass'n v.*

*115 Owner LLC*, No. 20 Civ. 2157, 2021 WL 5086368, at *1 (S.D.N.Y. Nov. 2, 2021) (quoting

*Navarro*, 446 U.S. at 465).  Often, such a party is a trustee.  *E.g.*, *Navarro*, 446 U.S. at 465–66;

*Wells Fargo Bank Nw., N.A. v. Synergy Aerospace Corp.*, No. 16 Civ. 8065, 2017 WL 3393945,

at *6 (S.D.N.Y. Aug. 7, 2017).  But, the issue does not turn on the party's label or the exact

scope of his authority.  *See Wells Fargo Bank Nw., N.A. v. TACA Int'l Airlines, S.A.*, 314 F.

Supp. 2d 195, 201 (S.D.N.Y. 2003) (noting that "'it would be a mistake to complicate the

ascertainment of jurisdiction by making it turn on the precise division of responsibilities

between' trustees and other parties" (quoting *May Dep't Stores Co. v. Fed. Ins. Co.*, 305 F.3d

597, 599 (7th Cir. 2002) (Posner, J.))).

Vyas contends that he is not a real and substantial party to this controversy because Q3I

is not a trust, and he does not hold legal title to Q3I's assets.  ECF No. 243 at 2.  But as

Defendants point out, Vyas' role as liquidating agent encompasses the same types of

responsibilities as the role of trustee.  *See* ECF No. 244 at 3.  The document appointing Vyas

grants him the authority:

> to act in his . . . own name as agent for and on behalf of [Q3I], within his . . . sole
> and absolute discretion, to marshal and liquidate [Q3I's] assets, determine and pay
> its liabilities, bring or defend claims, choose not to bring or defend claims, to
> confess liability, assert or waive privileges, make decisions with respect to, or
> permitted by, the [Q3I] Limited Partnership Agreement or otherwise act within the
> discretion provided by that Limited Partnership Agreement or the Delaware Code.

ECF No. 244-1 at 2.  Furthermore, the Delaware statute governing the winding up of limited

partnerships refers to a person acting in the same capacity as Vyas as a "liquidating trustee," Del.

Code. Ann. tit. 6, § 17-803, and one U.S. district court has previously described Vyas as

"performing a similar role to that of a receiver or trustee," *Vyas v. Polsinelli PC*, No. 22 Civ. 71,

2022 WL 1568405, at *3 (M.D. Fla. May 18, 2022).  As such, he is a "real and substantial party"

to this litigation, and it his citizenship, not Q3I's, that controls.  The parties are therefore diverse.

II.       Motion to Dismiss

Having ascertained that jurisdiction lies, the Court now addresses Taglich's motion to

dismiss.  Taglich argues that Vyas' claims for breach of fiduciary duty and negligence fail

6

because (1) they are barred by claim preclusion, and (2) Taglich did not owe a fiduciary duty or a duty of care to Q3I.[3]  ECF No. 210 at 1–3.

      A.  Claim Preclusion

According to Defendants, the New York state court's January 2023 dismissal in the *Recovery Vehicle* litigation bars Plaintiffs' litigation of the claims at issue here.  *Id.* at 20.  Claim preclusion "bars successive litigation based upon the 'same transaction or series of connected transactions' if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was."  *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008) (citation omitted).  For claim preclusion to apply here, then, Vyas, as representative for Q3I, must be in privity with the Recovery Vehicle, which is comprised of Q3I investors.

Two parties are in privity for preclusion purposes when "the interests of the nonparty [to an earlier action] can be said to have been represented in the prior proceeding."  *Green v. Santa Fe Indus., Inc.*, 514 N.E.2d 105, 108 (N.Y. 1987).  But the Recovery Vehicle cannot be in privity with Q3I because "the claims asserted and the interests represented by the [Recovery Vehicle] are not in all respects identical" to those at issue here.  *Id.* at 109.  Specifically, although the New York state action and this suit are based on the same theories of recovery, and the parties are represented by the same counsel, the Recovery Vehicle stood to recover damages only as to the

---

[3] The Court analyzes Vyas' claims under New York law because New York has "the most significant interest in, or relationship to, the dispute." *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018) (quoting *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006)). Defendants both have their principal places of business in New York, Am. Compl. ¶¶ 10–11; the allegedly tortious conduct must, then, have occurred there, so New York law applies, *see Holborn Corp.*, 304 F. Supp. 3d at 398 (explaining that in New York, when it comes to negligence and breach of fiduciary duty, "the law of the jurisdiction where the tort occurred will generally apply" (quotation omitted)); *Padula v. Lilarn Prop. Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994) (same).

73 participating limited partners, while Vyas stands to recover damages for the entire limited

partnership, including the limited partners who did not participate in the Recovery Vehicle. *See*

Am. Compl. ¶ 41 (stating that Q3I had over 150 investors); ECF No. 215-4 at 12 (Taglich's

memorandum in support of its motion to dismiss the amended complaint in the New York state

action, which explains that the Recovery Vehicle represented only about half of all Q3I

investors).  In fact, in its briefing before the New York state court, Taglich argued that the

Recovery Vehicle's claims failed precisely *because* they "belong[ed] to the entire Q3 limited

partnership, not just the 73 individual investors pursuing claims in this action."  ECF No. 215-4

at 13.  Taglich can hardly now assert that those 73 investors and Q3I are in privity for purposes

of claim preclusion here.

        B.  Breach of Fiduciary Duty

        Moving on to the merits of Plaintiff's claims, Vyas alleges that McEvoy owed a fiduciary

duty to Q3I as "fund administrator."  Am. Compl. ¶¶ 49–52.  But Taglich owed Q3I no fiduciary

obligations because McEvoy owed no fiduciary duties to the fund.

        A fiduciary relationship exists between two parties "when one of them is under a duty to

act for or to give advice for the benefit of another upon matters within the scope of the relation."

*EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005) (quoting Restatement

(Second) of Torts § 874 cmt. a).  Such a relationship "is grounded in a higher level of trust than

normally present in the marketplace between those involved in arm's length business

transactions."  *Id.*  Although "liability is not dependent solely upon an agreement or contractual

relation between the fiduciary and the beneficiary," a claim for breach of fiduciary duty will not

survive a motion to dismiss unless a plaintiff "sets forth allegations that, apart from the terms of

the contract, the [alleged fiduciary and the beneficiary] created a relationship of higher trust than

would arise from [a contract for services] alone." *Id.* (quoting Restatement (Second) of Torts § 874 cmt. b).

Vyas' allegations, if true, are insufficient to establish that McEvoy owed Q3I a fiduciary duty. In his position as fund administrator, McEvoy allegedly was "responsible for the fund's compliance with relevant Anti-Money Laundering . . . and Know Your Customer . . . rules and regulations," "coordinated between Q3I and outside attorneys on behalf of Q3I to ensure compliance with regulations," drafted investment documents, and "approved" new Q3I limited partners. Am. Compl. ¶¶ 28, 36, 40. None of these responsibilities, without more, imply the existence of a fiduciary relationship, because a "conventional business relationship, without more, is insufficient to create a fiduciary relationship." *Saul v. Cahan*, 153 A.D.3d 947, 949 (N.Y. App. Div. 2017) (citation omitted). Nor does Plaintiff allege that McEvoy was charged with providing investment advice regarding the fund. *Cf. Bullmore v. Ernst & Young Cayman Is.*, 846 N.Y.S.2d 145, 148 (N.Y. App. Div. 2007) (explaining that "investment advisors . . . owe fiduciary duties to their clients"). Because Vyas "fails to allege 'special circumstances' that transformed the . . . business relationship" between McEvoy and Q3I into a fiduciary one, "such as 'control by one party of the other for the good of the other,'" he cannot state a claim for breach of fiduciary duty as to McEvoy or, by extension, Taglich. *Saul*, 153 A.D.3d at 949 (quoting *L. Magarian & Co. v. Timberland Co.*, 245 A.D.2d 69, 70 (N.Y. App. Div. 1997)).

C. Negligence

Next, Vyas asserts that Taglich is responsible for McEvoy's allegedly negligent management of the fund. Am. Compl. ¶¶ 53–63. "The threshold question in any negligence action is whether the defendant owes a legally recognized duty of care to the plaintiff." *Davis v. S. Nassau Cmtys. Hosp.*, 46 N.E.3d 614, 618 (N.Y. 2015) (cleaned up) (quoting *Hamilton v.*

9

*Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1060 (N.Y. 2001)).  As its fund administrator, McEvoy

owed a duty of care to Q3I, *see N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995)

(explaining that "[t]he very nature of a contractual obligation, and the public interest in seeing it

performed with reasonable care, may give rise to a duty of reasonable care in performance of the

contract obligations"), and the amended complaint alleges facts that would support a finding of

negligence on his part,[4] *see* Am. Compl. ¶ 6 (alleging that McEvoy "[n]ever verified the balance

of the cryptocurrency held by Q3I in the exchanges" and that, if he had, he "would have

immediately known that Ackerman was defrauding Q3I"); *id.* ¶ 44 (alleging that McEvoy falsely

told Seijas that he cleared the movement of funds in Q3I's bank account with a law firm).  The

issue here is whether *Taglich* is responsible for McEvoy's alleged negligence.

Vyas attempts to hold Taglich vicariously responsible for McEvoy's actions under

theories of apparent authority and *respondeat superior*.[5]  Am. Compl. ¶ 47.

To succeed under the former, a plaintiff must demonstrate that a principal "created an

appearance of authority on which the plaintiff reasonably relied."  *Parlato v. Equitable Life

Assurance Soc'y of the U.S.*, 299 A.D.2d 108, 114 (N.Y. App. Div. 2002).  Crucially, "[t]he

---

[4] Vyas also alleges that Taglich was grossly negligent.  Am. Compl. ¶¶ 53–58.  An employer will be held liable for gross negligence when a plaintiff establishes that the employer "was aware of a subordinate's prior substantial misconduct but failed to take appropriate action to prevent future similar misconduct before the plaintiff was eventually injured."  *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014).  The amended complaint does not allege that Taglich "knew or should have known of a problematic pattern" of conduct by McEvoy, so Plaintiff's claim for gross negligence fails.  *Id.*

[5] In response to Taglich's motion to dismiss, Vyas asserts that Taglich also breached its duty to Q3I under a theory of "direct liability."  Pl. Mem. at 12–14, ECF No. 215.  But the amended complaint does not contain any allegations suggesting that Taglich's own behavior damaged the Q3I investors.  Taglich could be held directly liable for damage caused by McEvoy if Vyas could show that Taglich were negligent in its hiring or retention of McEvoy because it knew or should have known about McEvoy's tendency to cause the type of harm that Plaintiff suffered.  *See Engelman v. Rofe*, 144 N.Y.S.3d 20, 26 (N.Y. App. Div. 2021); *see also Bouchard v. N.Y. Archdiocese*, 719 F. Supp. 2d 255, 261 (S.D.N.Y. 2010) ("A cause of action for negligent hiring or retention requires allegations that the employer failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee." (cleaned up) (citation omitted)).  However, Vyas does not plead any facts suggesting that Taglich should have known that McEvoy had a propensity toward negligence, so this theory of liability also fails.

existence of apparent authority depends on the words or actions of the principal, not the agent."
*Weiss v. Hager*, 151 A.D.3d 906, 908 (N.Y. App. Div. 2017).  That is, "[t]he agent cannot by his
own acts imbue himself with apparent authority."  *Hallock v. State*, 474 N.E.2d 1178, 1181
(N.Y. 1984).

Vyas claims that Taglich imbued McEvoy with apparent authority to enter into a fund
administrator services agreement on its behalf.  Pl. Mem. at 19, ECF No. 215.  Vayas alleges that
Taglich employed McEvoy, Am. Compl. ¶ 21; that Taglich held McEvoy out as one of its
employees on its website, *id.* ¶ 30; that McEvoy used his Taglich email account to perform work
for Q3I, *id.* ¶ 33; and that Q3I "believed that McEvoy was fully backed by Taglich when he was
hired [as fund administrator]," *id.* ¶ 22.  The first and second allegations concern conduct that
could not reasonably be relied upon as investing McEvoy with apparent authority to enter an
agreement on Taglich's behalf to serve as fund administrator.  *See Nat'l Union Fire Ins. Co. of
Pittsburgh v. Surgalign Spine Techs., Inc.*, No. 22 Civ. 9870, 2024 WL 477031, at *5 (S.D.N.Y.
Feb. 7, 2024).  The third and fourth allegations implicate action that Taglich itself did not take.
Accordingly, Vyas fails to state a claim of liability under a theory of apparent authority.

Vyas' theory of supervisory liability fares better.  Under the doctrine of *respondeat
superior*, an employee "may be held vicariously liable for torts, including intentional torts,
committed by employees acting within the scope of their employment."  *Rivera v. State*, 142
N.E.3d 641, 645 (N.Y. 2019).  Liability attaches only when the tortious conduct is "generally
foreseeable and a natural incident of the employment" and when the employee acts "in
furtherance of the employer's business."  *Id.* (first quoting *Judith M. v. Sisters of Charity Hosp.*,
715 N.E.2d 95, 96 (N.Y. 1999); and then quoting *Doe v. Guthrie Clinic, Ltd.*, 5 N.E.3d 578, 580

(N.Y. 2014)).  To determine whether an action taken by an employee falls withing the scope of

their employment, courts consider:

> the connection between the time, place and occasion for the act; the history of the
> relationship between employer and employee as spelled out in actual practice;
> whether the act is one commonly done by such an employee; the extent of departure
> from normal methods of performance; and whether the specific act was one that the
> employer could reasonably have anticipated.

*Burlarley v. Wal-Mart Stores, Inc.*, 904 N.Y.S.2d 826, 827 (N.Y. App. Div. 2010) (quoting

*Riviello v. Waldron*, 391 N.E.2d 1278, 1281 (N.Y. 1979)).  "Employer responsibility is broad,

particularly where employee activity may be regarded as incidental to the furtherance of the

employer's interest."  *Cobena v. Antonioli*, 191 N.Y.S.3d 442, 444 (N.Y. App. Div. 2023)

(citation omitted).

According to the amended complaint, during the relevant period, Taglich listed McEvoy

as an employee on its website and in marketing materials and identified him as a specialist "in

evaluating and executing new investments, monitoring existing investments and portfolio

company divestitures."  Am. Compl. ¶¶ 22, 30.  McEvoy allegedly undertook his work as fund

administrator during "the authorized time and space limits applicable to his employment" with

Taglich, and his work on behalf of Q3I served as a "business development opportunit[y]" for

Taglich.  *Id.* ¶ 24.  Furthermore, as described above, McEvoy used his Taglich email account to

perform services for Q3I.  *Id.* ¶ 33.

These claims, taken as true, plausibly allege that McEvoy's work for Q3I fell within the

scope of his employment for Taglich.  Taglich "need not have foreseen the precise act or the

exact manner of the injury" to be held vicariously liable for McEvoy's conduct; rather,

McEvoy's work for Q3I need only be of "the general type . . . reasonably expected."  *Riviello*,

391 N.E.2d at 304.  The role of fund administrator encompasses work of the type "commonly

done" by a chartered financial analyst, work that a financial company could "reasonably have anticipated" its employee performing. *Burlarley*, 904 N.Y.S.2d at 827 (quoting *Riviello*, 391 N.E.2d at 1281). On the current record, the Court cannot say that McEvoy's work for Q3I fell outside the scope of his employment. The claim, therefore, survives.

    III.    <u>Leave to Amend</u>

Vyas requests that, should the Court grant any portion of Taglich's motion to dismiss, it should also grant Vyas leave to file a second amended complaint. Pl. Mem. at 28. As described above, this litigation has stretched on for years and across multiple venues. Judge Parker's December 2023 opinion denying Vyas' first motion to amend thoroughly explained why amendment would not be appropriate, *see* ECF No. 177, and Vyas has provided no compelling reason why the Court should reconsider that decision now.

**CONCLUSION**

For the foregoing reasons, Taglich's motion to dismiss Counts I and II is GRANTED, and its motion to dismiss Count III is DENIED.[6] The Clerk of Court is respectfully directed to terminate the motion at ECF No. 209.

    SO ORDERED.

Dated: January 13, 2025
      New York, New York

                        _____
                           ANALISA TORRES
                     United States District Judge

---

[6] Vyas' request for a conference, ECF No. 254, is DENIED as moot.